DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MICHELE MENDEZ,**
Appellant,

v.

**ADRIAN MENDEZ** and **CHARLES A. LOWE, III,**
Appellees.

No. 4D2024-0113

[July 10, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Darren Shull, Judge; L.T. Case No. 50-2020-DR-007841-XXXX-MB.

Mysha Finch Browning of Purlaw, Boynton Beach, for appellant.

No appearance for appellees.

WARNER, J.

Appellant, the Mother, appeals a final judgment of paternity with a parenting plan. The trial court entered a default judgment based upon the Mother's failure to answer an amended complaint. However, the court entered judgment without giving the Mother an opportunity to be heard on the parenting plan. The court also failed to make any written findings of fact as mandated by section 61.13, Florida Statutes (2023), with respect to the parenting plan. These errors require reversal.

In September 2020, the Father filed a petition to establish paternity of S.D.L., to establish a parenting plan, and for other related relief. The Mother moved to dismiss the Father's petition because she was married to another man, and the Father had not made sufficient allegations to rebut the presumption that the husband of a child's biological mother is that child's legal father. The Father filed an amended petition addressing those deficiencies, and the Mother filed a motion to dismiss the amended petition.

In March 2021, the Mother's counsel moved to withdraw with the Mother's consent. The order granting withdrawal specified: "All future

pleadings, communications and correspondence shall be directed to Respondent at [the Mother's email address], whose mailing address is [the Mother's street address], and phone number is [the Mother's telephone number]."

In August 2021, the trial court heard the Mother's motion to dismiss, although a notice of hearing is not part of this record. The Mother did not appear, and the court denied the motion, giving the Mother ten days to amend. This order shows that a copy was furnished to the Mother at her street address with her email address in brackets. After the Mother did not file an answer, the Father moved for a default, but his motion was not served on the Mother. Instead, he served her withdrawn counsel.

Almost a year later, the trial court entered a Notice of Lack of Prosecution setting a hearing for a response. That order was served on the Mother's withdrawn attorney and the Mother at her street address, with the notation "No Email address available," despite the original withdrawal order which set forth the Mother's email address, as well as her street address. The trial court moved the hearing to another date in December 2022 and issued a re-notice of hearing. Like the previous notice, this notice was mailed to the Mother's street address, but stated that there was "no email address available" for her.

In May 2023, the trial court reviewed the court file and issued an order denying the Father's August 2021 motion for default. This order was served on the Mother at her street address.

The Father moved for a case management conference, serving the Mother at her email address. That conference apparently took place in July 2023, but an order setting the conference is not in this record, so it is unknown at what address the Mother was served.

In August 2023, the trial court issued an order vacating its May 2023 order denying the Father's August 2021 motion for default and entering a default against the Mother. This default order was served on the Mother by email.

Thereafter, on October 6, 2023, the trial court issued an order setting a remote final hearing on the default to be held on October 30. The order setting the hearing was mailed to the Mother at her street address, with a notation stating, "No Email Address Available."

After the October 30 final hearing, which the Mother did not attend, the trial court rendered a final judgment of paternity, declaring the Father as

S.D.L.'s legal father, and establishing a parenting plan and child support guidelines. This order was served on the Mother by email.

On November 11, 2023, after obtaining counsel, the Mother filed a verified motion for rehearing. The Mother swore that she had never received notice of the October 30 final hearing on default and that she had not lived at the street address used by the court for months. As a result, she claimed that she had been denied due process because she never had notice of the default hearing. The Mother also argued that even if she had notice of the hearing, rehearing was warranted because the Mother had been deprived of an opportunity to be heard on the best interests of S.D.L. Finally, she argued that the trial court had failed to make written findings of fact as required when a court implements a time-sharing schedule not agreed to by the parties.

The trial court held a hearing on the Mother's motion for rehearing. The Father argued that rehearing was not warranted, because the Mother was at fault for not receiving notice, as she had never filed a designation of email address and had failed to inform the court of her change in physical address. The Mother argued that her failure to update her physical address was excusable neglect, and that the court was required to hear testimony from both parents in order to make findings for S.D.L.'s best interests. The trial court denied the Mother's motion for rehearing, and the Mother has filed this appeal.

**Analysis**

**Lack of Notice**

Although the record shows multiple issues with proper notice, the Mother only argues on appeal that she was deprived of due process when the trial court did not email her notice of the October 30 final hearing on default but mailed it to her former address, where she had not lived for several months. However, in August 2023, the trial court entered a default against the Mother, which she does not challenge in this appeal even though she was not served with the motion for default. Florida General Practice and Judicial Administration Rule 2.516(h)(1) provides that for court orders, "[n]o service need be made on parties against whom a default has been entered except orders setting an action for trial and final judgments . . . ." Rule 2.516(h)(1) further instructs that orders setting an action for trial and final judgments "must be prepared and served as provided in subdivision (h)(2)." Fla. R. Gen. Prac. & Jud. Admin., Rule 2.516(h)(1). Rule 2.516(h)(2) in turn instructs:

When a final judgment is entered against a party in default, **the court must mail a conformed copy of it to the party**. The party in whose favor the judgment is entered must furnish the court with a copy of the judgment, unless it is prepared by the court, with the address of the party to be served. If the address is unknown, the copy need not be furnished.

Fla. R. Gen. Prac. & Jud. Admin., Rule 2.516(h)(2) (emphasis added).

Rule 2.516(h)(1) also provides that "[t]he court **may** serve any order or judgment by e-mail to all attorneys and parties not represented by an attorney who have not been excused from e-mail service." Fla. R. Gen. Prac. & Jud. Admin., Rule 2.516(h)(1) (emphasis added). Thus, for a court's order setting trial or the judgment, service by email is optional and service by mail is the default method. The Mother provided her current address when her former counsel withdrew, but she failed to keep it updated when she moved. It is a party's obligation to notify the court if the party changes addresses. *Seay Outdoor Advertising, Inc. v. Locklin*, 965 So. 2d 325, 329 (Fla. 1st DCA 2007). However, when *Locklin* was decided, no email service was available to litigants. Therefore, keeping the court informed of the litigants correct mail address was crucial. Nevertheless, here the trial court did comply with the notice provisions of the rule, and the Mother's failure to receive the notice setting the trial was due to her failure to provide her current address.

Though apparently allowed by the rules, the trial court's inconsistency in methods of service here was problematic. Although the rules now provide that parties not represented by an attorney are required to be served and accept service by email, the rules inconsistently require service by regular mail of orders setting trial or final judgments. It is understandable that a litigant, expecting to be served by email, may forget to notify the court of a change of street address for regular mail service. In this case, the trial court and the Father served the Mother sometimes at her email address and sometimes at her street address. This inconsistency is the root of the problem in this case. It would be helpful if the Rules Committee would take a look at this issue, especially for unrepresented litigants, as pro se litigants are involved in many cases—particularly in Family Law cases.

**Lack of Opportunity to be Heard**

The Mother also argues that even if she had received adequate notice and had failed to appear at the hearing, the trial court reversibly erred in

4

entering a parenting plan without giving her the opportunity to be heard as to the best interests of S.D.L.

In *Armstrong v. Panzarino*, 812 So. 2d 512 (Fla. 4th DCA 2002), the mother appealed an order denying relief from a final judgment of paternity that also made child custody determinations. *Id.* at 513. Like this case, the mother in *Armstrong* was defaulted after failing to answer the Father's petition, and failed to appear at the final hearing where custody matters were determined. *Id.* After the mother moved to set aside that judgment, the trial court held a hearing to determine whether her absence was due to excusable neglect. *Id.* The court found that the mother willfully attempted to manipulate the court and denied the motion. *Id.* at 514.

On appeal, we held that the trial court abused its discretion in making a custody determination without hearing evidence from the mother on the best interests of the child. *Id.* We reasoned:

> Under most circumstances, a party seeking relief from a default judgment must demonstrate excusable neglect, a meritorious defense, and that the party acted with due diligence. *Andrade v. Andrade*, 720 So. 2d 551, 552 (Fla. 4th DCA 1998); *Burke v. Reyes*, 687 So. 2d 929, 929 (Fla. 3d DCA 1997).

> We have recognized, however, that the "best interest of the child" standard precludes a determination of child custody based on a parent's default. [citations omitted] In making a determination on child custody according to the best interests of the child "guidepost," the court should have the benefit of the testimony of both parents. [*Dellavecchia v. Dellavecchia*, 547 So. 2d 287, 287 (Fla. 2d DCA 1989)] (holding that, despite the mother's default, the issue of custody should be re-evaluated by the trial court on remand).

> Thus, there is a well-established exception to the prevailing influence of trial court discretion on review in order to ensure that the ultimate decision is in the child's best interest. Accordingly, even though there is a reasoned basis in this case for the trial court to discount the mother's excuse for failing to inform the court she would not attend the hearing, her testimony may prove critical to the court's determination of the child's best interest and should, therefore, be heard for the protection of the child . . . .

5

We conclude, therefore, that the court's decision that [the mother] willfully failed to attend is not a sufficient justification to deny [the mother] this opportunity to be heard before permanently removing the child from her primary care.

*Id.*; *see also Causin v. Leal*, 881 So. 2d 20, 22 (Fla. 4th DCA 2004) (internal citation omitted) ("[T]hese general rules regarding defaults are not sufficient for decisions affecting the custody of children. The court must have information from all sides in order to render a decision in the best interest of a child. This cannot be accomplished if matters are conducted on a default basis with only one side presenting testimony. A default may be an appropriate mechanism to decide other issues involved in a dissolution of marriage action. However, it simply is not proper to decide custody based on a default."); *Jeffers v. McLeary*, 118 So. 3d 287, 289 (Fla. 4th DCA 2013) (citations omitted) ("Because orders affecting time-sharing implicate the best interest of the child, 'both parents should have the opportunity to put on evidence . . . regardless of how they conduct themselves.' Even when a parent willfully fails to attend a hearing, the trial court should still give the parent the opportunity to be heard and to present evidence before reaching a decision affecting time-sharing.").

Thus, even though the Mother did not attend the fifteen minute default hearing, she still should have been given the opportunity to present evidence about S.D.L.'s best interests when she presented that issue in her motion for rehearing and showed excusable neglect for lack of notice of the hearing. The trial court erred in failing to grant her motion for rehearing and open the case to allow for her to present evidence regarding the child's best interests.

**Failure to Make Findings**

As of July 1, 2023, the Legislature has amended section 61.13, Florida Statutes to instruct: "Except when a time-sharing schedule is agreed to by the parties and approved by the court, the court must evaluate all of the factors set forth in subsection (3) and make specific written findings of fact when creating or modifying a time-sharing schedule." § 61.13(2)(c)1., Fla. Stat. (2023) (emphasis added). In turn, section 61.13(3), Florida Statutes (2023), prescribes twenty factors for courts to consider in creating or modifying a parenting plan.

The final judgment made no findings as to the statutory factors. The parenting plan which the court adopted in the final judgment indicates that it was submitted to the court with the agreement of the parties, but the agreement was not signed, and no evidence was taken at the final

hearing.  While section 61.13(2)(c)1. does not require findings where the time sharing schedule is agreed to by the parties, nothing in this record shows that the Mother agreed to it.[1]

Because the trial court made no findings and did not have evidence that the Mother had agreed to the plan, the court erred in entering the parenting plan without making the statutory factor findings.

## Conclusion

While the Mother was given notice of the final hearing of default in accordance with the rules of civil procedure, she did not attend the hearing, and a parenting plan was adopted by the trial court at that hearing.  The court erred in denying her motion for rehearing, given the Mother's reasonable explanation for failure to appear.  Refusing to hold a hearing on the best interests of the child was error, as child custody matters are not properly decided by default.  Further, the court failed to make the statutorily required findings on the factors enumerated in section 61.13(3), which were required in this case, because no proof existed that the Mother had agreed to the proposed parenting plan.

*Reversed and remanded for further proceedings.*

GERBER and KUNTZ, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

---

[1] To the extent the Mother could have been considered to agree by default, we have held that child custody should not be determined on a default basis.  *See Armstrong*, 812 So. 2d at 514; *Causin*, 881 So. 2d at 22; *Jeffers*, 118 So. 3d at 289.

7