DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ADEL VAELIZADEH,**
Appellant,

v.

**MAHNAZ HOSSAINI,**
Appellee.

No. 4D15-2580

[September 2, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dale C. Cohen, Judge; L.T. Case No. 14-011022 37/98.

John J. Shahady of Kopelowitz Ostrow, Fort Lauderdale, and John M. Ross of John M. Ross, P.A., Fort Lauderdale, for appellant.

Steven D. Miller, Plantation, for appellee.

GERBER, J.

The father appeals from the circuit court's final judgment granting the mother's petition to relocate with the parties' minor child to Nebraska. The father argues good cause existed to preclude entry of the relocation judgment despite the father's untimely response to the mother's petition. We agree with that argument and reverse.

*Procedural History*

The parties are the unmarried parents of a seven-year-old child. After the child was born in 2008, the child lived with the mother in Nebraska while the father lived in Florida. In 2010, a Nebraska court entered a paternity order including a parenting plan. The parenting plan awarded the mother residential custody, subject to the father's timesharing.

In 2013, the mother and child moved to Broward County to live with the father. In 2014, the father filed a petition in Broward County to domesticate the Nebraska order in Florida. In 2015, the father filed an amended petition not only to domesticate the Nebraska order, but also to modify the order. The amended petition alleged, in pertinent part:

The minor child's home state is Florida, his home County is Broward. The minor is in the Broward County School System now, for his second consecutive year. The minor child is involved in extracurricular activities in Broward County with the permission and with the encouragement of both of his parents. The minor child is entitled to Health Insurance Coverage in the State of Florida. It is in the best interest of the minor child to have the Court exercise jurisdiction over this matter and to domesticate, register and modify the attached foreign decree.

The amended petition further alleged a "substantial and material change of circumstances," to justify the father's requests that: the father and child exclusively possess the father's home; the mother reside outside of the father's home; and an appropriate timesharing arrangement be established to promote the child's best interests.

In March, 2015, the mother took the child to Nebraska for spring break, despite the fact that the Nebraska order required the child to spend spring break with the father. The father immediately filed a motion to compel the child's return. Without court action, the mother returned to Florida with the child after spring break, but she maintained custody of the child.

On March 23, 2015, the mother filed a "supplemental petition to permit relocation with minor child" and e-mailed a copy to the father's attorney. In the petition, the mother alleged:

When my son turned 5 years old, [the father] and I reconciled as a couple (we were never married) and I took a leap of faith and moved to Florida giving up my entire foundation in Nebraska – family and employment. He promised marriage. [The father] became verbally and emotional[ly] abusive. In order to support myself, I began working part time to become more independent although my primary job is to be a mother. The move to Florida has left me financially disabled with no support system in place [sic] has refused to replace the vehicle that was damaged in an accident and has sought to remove me from the only home I have in Florida. I have no place to go and no support system in Florida, financial or otherwise. His desire to control my child and me is a cultural issue that has caused me to seek the assistance of Women in Distress.

2

In drafting the petition, the mother used Florida Family Law Form 12.950(d), entitled "Supplemental Petition to Permit Relocation with Minor Children." That form stated, in pertinent part:

> A RESPONSE TO THE SUPPLEMENTAL PETITION OBJECTING TO RELOCATION MUST BE MADE IN WRITING, FILED WITH THE COURT, AND SERVED ON THE PARENT OR OTHER PERSON SEEKING TO RELOCATE WITHIN 20 DAYS AFTER SERVICE OF THIS SUPPLEMENTAL PETITION TO RELOCATE. IF YOU FAIL TO TIMELY OBJECT TO THE RELOCATION, THE RELOCATION WILL BE ALLOWED, UNLESS IT IS NOT IN THE BEST INTERESTS OF THE CHILD, WITHOUT FURTHER NOTICE AND WITHOUT A HEARING.

On April 17, 2015 (twenty-five days after the mother served her petition), the mother requested the court to grant relocation because the father did not object timely to the supplemental petition. The mother sent a proposed "final judgment for relocation" to the court and copied the father's attorney.

Three days later, on April 20, 2015, the father's attorney served a motion "to set aside/strike and[/]or dismiss" the mother's petition. In the motion, the father alleged:

> 3. The means in which the [mother] has attempted to remove the child include taking the child out of the State without the [father's] permission . . . for a period of time that was not permitted according to their parenting agreement currently in place.
>
> 4. When [the mother] did finally return, the child has [sic] missed some school days and was exhibiting issues of emotional depression, sadness and withdrawal.
>
> 5. The [mother] had taken the child to the home of her former Husband (with whom she had previously charged with domestic violence, and where the child had previously seen and had been involved in the violence of the [sic] his Mother and her former Husband in the past).
>
> 6. Procedurally, the manner in which the "Relocation for Minor Child" has been filed and where relief by the [father] is requested, is legally inept, inadequate and cannot stand in the Court of law.

One week later, on April 27, 2015, the mother removed the child from school in the middle of the day and relocated with him to Nebraska.

Two days later, on April 29, 2015, the father, through a new attorney, filed a verified emergency motion "to compel [the mother] to disclose the minor child's whereabouts and return to Florida."

One week later, on May 6, 2015, the circuit court held a hearing on the father's motion. At the hearing, the father's new attorney advised that the father's original attorney: was out of the area tending to an ill family member; had filed a notice of unavailability; and "got [the father's new attorney] involved because the case needed immediate attention."

The court denied the father's motion. The court reasoned:

> Instead of taking the time to do a notice of unavailability, [the father's original attorney] could have just filed an answer or denial of [the mother's] petition and ask for a hearing. So, I'm not going to sign the pick-up order.

> I don't know if [the father is] entitled to a hearing at this point since 20 days went by after the service. Or if [the father is] entitled to a hearing, I think the child is allowed to stay out of state, but I'm not going to order the child back to the State of Florida since [the father's original attorney] didn't file an answer within the 20 days.

The court then stated that the father could set a "best interests" hearing, but that the court would allow the relocation to continue in the interim.

Immediately after the hearing, the court entered a written order stating:

> The Motion for Pickup Order is denied as [the father] failed to respond to the petition within 20 days of "service" on his counsel by e-portal filing. The Court finds this to be good service of process of the Petition for Relocation pursuant to Rules 1.080 Civil Procedure and 2.516 of Judicial Admin. *Court will schedule a best interests hrg upon motion being filed for same.*

(emphasis added).

However, later that day, the court entered a final judgment granting relocation. The judgment states, in pertinent part: "As a result of [the father's] failure to file a timely objection to [the mother's] petition[,] relocation is presumed to be in the best interest of the minor child."

Within ten days of service of the judgment, the father, through a third attorney, served a verified motion for rehearing and/or to vacate and allow filing of an objection to the mother's relocation petition. In the motion, the father primarily argued that the relocation judgment equated to a default judgment, which is disfavored in child custody cases. However, the father then argued that, even accepting the relocation judgment as a default judgment, he met all of the elements required to vacate that judgment, by: (1) having acted with due diligence to challenge the relocation; (2) having demonstrated excusable neglect due to his original counsel's unavailability; and (3) having shown a meritorious defense in his proposed objection to relocation.

The court denied the father's motion for rehearing.

This appeal followed. The father argues good cause existed to preclude entry of the relocation judgment despite the father's untimely response to the mother's petition. We employ a mixed standard of review. *See Milton v. Milton*, 113 So. 3d 1040, 1041 (Fla. 1st DCA 2013) (an appellate court "reviews relocation determinations for abuse of discretion; however, the question of whether the trial court properly applied the relocation statute is a matter of law, reviewed de novo"); *Rossman v. Profera*, 67 So. 3d 363, 365 (Fla. 4th DCA 2011) ("Ultimately, the concern in a relocation determination is whether the relocation is in the best interests of the child.").

We agree with the father's argument. We will analyze the controlling statute before turning to the reasons for our decision.

*Analysis*

The mother filed her petition for relocation pursuant to section 61.13001(3), Florida Statutes (2014), which states, in pertinent part:

> Unless an agreement has been entered . . . a parent . . . seeking relocation must file a petition to relocate and serve it upon the other parent . . . . The pleadings must be in accordance with this section:

5

(a) The petition to relocate must be signed under oath or affirmation under penalty of perjury and include:

. . . .

7. Substantially the following statement, in all capital letters and in the same size type, or larger, as the type in the remainder of the petition:

A RESPONSE TO THE PETITION OBJECTING TO RELOCATION MUST BE MADE IN WRITING, FILED WITH THE COURT, AND SERVED ON THE PARENT OR OTHER PERSON SEEKING TO RELOCATE WITHIN 20 DAYS AFTER SERVICE OF THIS PETITION TO RELOCATE. IF YOU FAIL TO TIMELY OBJECT TO THE RELOCATION, THE RELOCATION WILL BE ALLOWED, *UNLESS IT IS NOT IN THE BEST INTERESTS OF THE CHILD*, WITHOUT FURTHER NOTICE AND WITHOUT A HEARING.

. . . .

(d) *If the other parent . . . fails to timely file a response objecting to the petition to relocate, it is presumed that the relocation is in the best interest of the child and that the relocation should be allowed, and the court shall, <u>absent good cause</u>, enter an order specifying that the order is entered as a result of the failure to respond to the petition and adopting the access and time-sharing schedule and transportation arrangements contained in the petition. The order may be issued in an expedited manner without the necessity of an evidentiary hearing. If a response is timely filed, the parent or other person may not relocate, and must proceed to a temporary hearing or trial and obtain court permission to relocate.*

§ 61.13001(3), Fla. Stat. (2014) (emphasis added).

Applying the statute here, we conclude the circuit court erred because good cause existed to preclude entry of the relocation judgment despite the father's untimely response to the mother's petition. We reach this conclusion for five reasons.

First, the father filed a petition to domesticate and modify the Nebraska order to seek residential custody, based on an alleged change in circumstances regarding the child's best interests, before the mother filed

her relocation petition. That petition remained pending when the court entered the final judgment.

Second, although the father missed the twenty-day deadline for filing his response to the relocation petition, the father expeditiously filed a motion "to set aside/strike and/or dismiss" the petition just eight days after that deadline, and just three days after the mother's request for an order granting relocation. In the motion, the father alleged: the mother violated the Nebraska order by removing the child from Florida at a time when the child was supposed to be residing with the father; the mother had taken the child to the home of her former husband, whom she allegedly had accused of domestic violence, and where the child allegedly had witnessed such violence; and when the mother returned, the child missed some school days and was exhibiting emotional issues. While we recognize the father's motion contains mere allegations which may not be true, the motion raised sufficient questions regarding the child's best interests.

Third, the record suggests that the father's untimely response to the relocation petition was not due to the father's willful inaction, but due to his original attorney's unavailability while tending to an ill family member. *Cf. Dixon v. City of Riviera Beach*, 662 So. 2d 424, 425 (Fla. 4th DCA 1995) ("Because it was the lawyers, not the plaintiffs, who contributed to the errors recited hereinabove, we believe it inappropriate to punish the plaintiffs.").

Fourth, while the cases which the father cites are distinguishable, because those cases involve custody determinations and this case involves a relocation, the cases admonish apparent defaults which do not consider the child's best interests. *See Jeffers v. McLeary*, 118 So. 3d 287, 290 (Fla. 4th DCA 2013) (reversing trial court's denial, without a hearing, of father's motions for rehearing and to vacate, where motions related to father's failure to appear at a hearing regarding child's time-sharing schedule; case involved time-sharing and, thus, affected child's best interests); *Crossin v. Crossin*, 979 So. 2d 298, 299 (Fla. 4th DCA 2008) (child custody issues should be determined upon child's best interests, and such issues should not be foreclosed on technical pleading defaults) (citations omitted); *Causin v. Leal*, 881 So. 2d 20, 22 (Fla. 4th DCA 2004) ("[W]e reverse that part of the trial court's final judgment granting the father custody based solely on a default and remand to the trial court to conduct such proceedings as are necessary to make findings of fact considering the best interest of the child."); *Childres v. Riley*, 823 So. 2d 246, 246 (Fla. 4th DCA 2002) (reversing and remanding for new trial on child custody, "hold[ing] that the issue of custody should not ordinarily be determined by entering

7

a default against one of the parents"); *Armstrong v. Panzarino*, 812 So. 2d 512, 514 (Fla. 4th DCA 2002) ("[T]he 'best interest of the child' standard precludes a determination of child custody based on a parent's default.").

Fifth, the relocation judgment is inconsistent with the court's oral ruling and written order from earlier that day stating that the father could set a "best interests" evidentiary hearing. Indeed, the record suggests that what the court may have intended was to deny the father's request for a pickup order (i.e., allow a *temporary* relocation) pending a "best interests" evidentiary hearing.

Based on the foregoing, we reverse the relocation judgment, treat the judgment as a non-final order granting temporary relocation, and remand for a "best interests" evidentiary hearing.

*Reversed and remanded.*

DAMOORGIAN and CONNER, JJ., concur.

*          *          *

**Not final until disposition of timely filed motion for rehearing.**